[ *266 ]          *FOLSOM and others vs. STREETER.

A vote of a *school district meeting* postponing the collection of a tax for the repair of a school house until the repairs are finished is a valid vote, and authorizes the collection of the tax.

A *warrant* for the collection of a tax voted at a school district meeting may be *issued* by a *majority* of the trustees, who are also competent to *renew* the warrant; it is not necessary *all* of them should concur.

A warrant also may be renewed as often as the circumstances of the case require.

Whether an *apportionment* of the tax may legally be made by *two* of the trustees in the *absence* of the third, *quere;* the act of two, however, in making the apportionment will be held valid, unless it affirmatively appear that the third was not notified and did not attend.

A warrant for collection is valid in form, which directs the collection of the tax in case of nonpayment, by distress and sale of goods in the same manner as is directed in warrants issued by the boards of supervisors for the collection of taxes.

A party assessed cannot object to the validity of a warrant under which his goods are sold, that after the delivery of the warrant ·to the collector the sum assessed to him is reduced in amount by one of the trustees of the district.

ERROR from the Essex C. P. Streeter sued J. Folsom, D. E. Sandford and H. H. Dennison, in an action of *trespass* for causing, as trustees of a school district in the town of Moriah, in the county of Essex, a pair of oxen belonging to the plaintiff to be sold at public vendue ; which warrant the plaintiff alleged was issued *illegally*. In October, 1833, *Folsom* and two other persons, viz. *J. Reed* and *J. H. Wood* were elected trustees of school district No. *one* in the town of Moriah ; and at the same meeting which elected the above trustees a vote was passed to raise $100, to repair the district school house " to be collected when the repairs were done." In October, 1833, a tax list was prepared to raise the sum voted, in which the sum to be paid by *Streeter* was put down at $36,90, and a warrant for the collection of the money made out. The tax list was prepared by *Folsom* and *Reed*, the other trustee, *Wood*, not being present, he having told his colleagues that he could not attend to it, that they must make it [ *267 ] out, and he would consent to *what they should do in the premises. The warrant bore date on the 30th October, 1833, and was

signed by only two trustees, viz. *Folsom* and *Reed*. The school house was not repaired until some time after the warrant was made out. In October, 1834, *Folsom* was *re-elected* a trustee, and *Sanford* and *Dennison* were elected his colleagues. In January, 1835, the warrant for the collection of the tax was *renewed* by *Folsom* and *Dennison*, the latter of whom removed from the state towards the close of the winter of 1835. It seems that previous to its renewal the warrant had not been delivered to the collector. On the 31st March, 1835, it was *renewed* a second time by *Folsom* and *Sanford*, and it was again renewed by them on the 9th July, 1835. After the warrant had been twice renewed, *Folsom* one of the trustees took it from the hands of the collector and *reduced* the sum to be paid by Streeter to $35,90. In the month of July, 1835, the oxen of the plaintiff were sold by virtue of the warrant. It was proved that in 1824 school district No. *one* was divided, and a new district formed called No. *four*, within the bounds of which Streeter resided ; but it also appeared that the district No. *four* was not duly organized, and that the proceeding creating it had been abandoned. There was an objection made to the proceedings of the trustees in making the apportionment, not necessary to be stated. There was also an objection taken on the trial to the *form* of the warrant of collection : it commanded the collector to collect from each of the inhabitants in district No. *one*, named in an annexed list the sum of money set opposite to his name, and in case of non-payment to levy the same by distress and sale of the goods and chattels of the delinquent in the same manner as in warrants issued by the boards of supervisors to the collectors of taxes. The court of C. P. held that the vote of the district school meeting postponing the collection of the tax until the repairs of the school house were made was *void*, and consequently did not authorize the issuing of the warrant for the collection of the tax. They also decided various other questions against the defendants, adverted to in the opinion delivered by the Chief Justice, to all of which *the defendants excepted. The jury under [ *268 ] the charge of the court found a verdict for the plaintiff with $65 damages, on which judgment having been entered, the defendants sued out a writ of error.

*E. Pearson*, for the plaintiffs in error.

*A. C. Hand*, for the defendant in error.

*By the Court*, NELSON, Ch. J. It may be useful for the information of trustees of school districts to give the views of the court upon the several questions raised in this case, though all of them are not material to its decision. The system has become somewhat complicated, the duties of these

officers often difficult, and involving considerable responsibility. Their conduct should always be viewed with indulgence, and is entitled to the most charitable intendments of the law.

1. The division of the district in 1824, by which the plaintiff was separated from No. 1, was never carried into effect by an organization of the new one (No. 4). It does not appear that any notice was given by the commissioners for that purpose according to the act, 1 *R. S.* 477, § 55 ; the old organization has continued down to the present time. The division was inchoate and never completed, and was practically abandoned.

2. The authority to vote a tax for repairs is express and unqualified, § 61, *sub.* 5, *p.* 478, and no time is specified in the act when or within which the money must be raised : it necessarily rests in the discretion of the meeting. It would have been wise, perhaps, to have limited the time by law. Whether an abuse can be otherwise reached, it is not important now to inquire. The moneys by the vote in question were not to be *collected* until the repairs were done, which in itself was unobjectionable—at least, so far as respected the tax payers. The delay, certainly, could do no harm to them, inasmuch as it does not appear that their rates were thereby increased.

By the 92d §, *p.* 483, the tax shall be assessed, and list made [ *269 ] out by the trustees *within a month after the same is voted, so that the persons voting the tax must pay it ; it was so made out here. The time was sufficiently definite, to enable the trustees to make the collection within the spirit of the vote. They contract for and superintend the repairs, and must know best when the work is done. It was, doubtless, for this reason the time for collection was left open ; and that to a vote in due form, an intimation was added to delay the collection till the money was wanted.

3. If the vote to raise the tax be in pursuance of the statute, then it follows there was sufficient foundation for the warrant in that respect.

4. Sec. 98, p. 484, provides that the warrant annexed to the tax rate shall be under the hands and seals of the trustees, or a *majority of them.* Here a majority signed, which satisfies the statute. By § 102, if the money shall not be paid by the persons named in the tax list, or collected within the time limited in the warrant, (thirty days after its delivery,) the *trustees* may renew it, &c. Trustees here mentioned, obviously refer to the same body authorized to issue the warrant, and the same number that can issue may renew it.

5. It is said the renewal was void, as no warrant had been previously issued. The renewal is in fact but a re-issuing of the process, and I perceive no reason against regarding it as an original issuing. Nor can the difference be material whether it lies in the hands of the trustees for a time, and is then revived by renewal, or in the hands of the collector unexecuted, which

confessedly would justify it. There is no limitation in the act as to the number of renewals, and I do not perceive any objection to its being renewed oftener than once. Such was always the practice in respect to justices' executions, though I admit the language of that act is somewhat more explicit. The case of issuing a second venire in a justice's court is perhaps more analogous. It follows from the above views that the judgment must be reversed.

As to the other questions raised in the bill of exceptions : 1. The C. P. decided that the tax list was properly made *out,  [ *270 ] which is said to be erroneous. The taxes are to be apportioned on all the taxable inhabitants within the district according to the valuation of their taxable property, § 86, *p.* 482, which is to be ascertained from the last assessment roll as far as practicable ; beyond this, the trustees are to make a valuation from the best evidence in their power. § 90, *p.* 485. In *Easton* v. *Callender*, 11 *Wendell*, 90, we held that this duty of the trustees is in its nature *quasi* judicial, and that the trustees are not personally responsible for errors or mistakes in the discharge of it. For aught I can discover in the bill of exceptions, the ruling was correct on this point. Whether an apportionment of the tax by two of the trustees, in the absence of the other, is valid, may be a question. I will not now express a definite opinion upon it. If the third did not participate in the act, in order to bring up the point, in its broadest aspect, it should be shown, if the fact be so, that he was notified, and refused or neglected to attend.

2. The form of the warrant is well enough ; and as to the mode of enforcing it, the collector is referred to the law respecting the duties of these officers under a warrant from the supervisors. There the steps required are specifically pointed out in the law. 1 *R. S.* 386, § 37 ; *also p.* 387, § 1, 2, 3, 4, and in connection, *p.* 478, § 98, 99, 100.

3. The proof in respect to an alteration of the tax list after renewal of the warrant is quite unintelligible. I am unable to comprehend the point, and shall therefore only say, that a reduction of *one dollar* in the plaintiff's tax cannot surely be a ground of complaint on his part.

Judgment reversed ; *venire de novo* by Essex common pleas ; costs to abide event.